*Attorney Grievance Commission of Maryland v. Ferdinand Uchechukwu Ibebuchi*, Miscellaneous Docket AG No. 19, September Term, 2019, Opinion by Booth, J.

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION**

This attorney grievance matter involves an attorney who represented a client in a District Court action in which the client was alleged to be an at-fault driver in a multi-vehicle collision. In connection with this representation, the attorney failed to timely respond to discovery requests, failed to appear for trial, and failed to advise his client that a default judgment had been entered against him. After the client learned about the default judgment from a notice issued by the Motor Vehicle Administration, the attorney advised his client that he would file a motion to try to have the case reopened. Despite these assurances, the attorney failed to take any action to assist his client with vacating the judgment, failed to follow up with the client, and failed to refund any portion of the fee charged for his services. After the client filed a complaint with the Attorney Grievance Commission, the attorney failed to respond to several letters requesting information in connection with the investigation.

The Court concluded that the attorney violated Maryland Attorneys' Rules of Professional Conduct (1) Rule 1.1 (Competence); (2) Rule 1.3 (Diligence); (3) Rule 1.4(a) and (b) (Communication); (4) Rule 1.5(a) (Fees); (5) Rule 1.16(d) (Declining or Terminating Representation); (6) Rule 3.2 (Expediting Litigation); (7) Rule 3.4(d) (Fairness to Opposing Party and Attorney); (8) Rule 8.1(b) (Bar Admission and Disciplinary Matters); and (9) Rule 8.4(a) and (d) (Misconduct). Indefinite suspension is the appropriate sanction in this case.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 19

September Term, 2019

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

FERDINAND UCHECHUKWU IBEBUCHI

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Booth, J.

Filed:     November 20, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

This attorney disciplinary matter concerns Ferdinand Uchechukwu Ibebuchi, Respondent, an attorney who was retained in October 2017 to represent a client in a District Court case where the client was alleged to be an at-fault driver in a multi-vehicle collision in Prince George's County, Maryland. Mr. Ibebuchi failed to timely respond to discovery requests, failed to appear for trial, and failed to advise his client that a default judgment had been entered against him. After the client learned about the default judgment from a notice issued by the Motor Vehicle Administration ("MVA"), Mr. Ibebuchi advised him that he would file a motion to try to have the case reopened. Despite these assurances, Mr. Ibebuchi failed to take any action to assist his client with vacating the judgment, failed to follow up with the client, and failed to refund any portion of the fee charged for his services. After Mr. Ibebuchi's client filed a complaint with the Attorney Grievance Commission of Maryland ("AGC"), Mr. Ibebuchi failed to respond to several letters requesting information in connection with the investigation.

The AGC, acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Mr. Ibebuchi. Bar Counsel charged Mr. Ibebuchi with violating the Maryland Attorneys' Rules of Professional Conduct ("MARPC"). After an evidentiary hearing, the hearing judge issued written findings of fact and conclusions of law to this Court, concluding that Mr. Ibebuchi violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.16(d), 3.2, 3.4(d), 8.1(b), and 8.4(a) and (d). As set forth more fully herein, we agree that Mr. Ibebuchi violated the Rules as charged by the AGC. We suspend Mr. Ibebuchi from the practice of law indefinitely.

# I

## Background

### A. Procedural Context

On August 16, 2019, the AGC, through Bar Counsel, filed the Petition against Mr. Ibebuchi, alleging that he had violated numerous provisions of the MARPC[1] in connection with his representation of a particular client. Specifically, Bar Counsel alleged that Mr. Ibebuchi violated Rule 1.1 (Competence); Rule 1.3 (Diligence); Rule 1.4 (Communication); Rule 1.5 (Fees); Rule 1.16 (Declining or Terminating Representation); Rule 3.2 (Expediting Litigation); Rule 3.4 (Fairness to Opposing Party and Attorney); Rule 8.1 (Bar Admission and Disciplinary Matters); and Rule 8.4(a) and (d) (Misconduct). The violations arose in connection with Mr. Ibebuchi's representation of Carlos Morales Jacome ("Mr. Morales") and Bar Counsel's investigation into Mr. Morales' complaint.

Pursuant to Maryland Rule 19-722(a), we designated Judge Michael R. Pearson of the Circuit Court for Prince George's County to conduct a hearing concerning the alleged violations and to provide findings of fact and conclusions of law. On February 20, 2020,

---

[1] The Maryland Attorneys' Rules of Professional Conduct are codified as Maryland Rule 19-300.1 *et seq*. In an effort to enhance readability, we use abbreviated references to the prior codifications of these rules, which are consistent with the ABA Model Rules on which they are based (*i.e.,* Maryland Rule 19-301.1 will be referred to as Rule 1.1). *See* ABA Compendium of Professional Responsibility Rules and Standards (Am. Bar Ass'n 2017).

Judge Pearson conducted an evidentiary hearing.[2]  Mr. Ibebuchi represented himself at the hearing.  Mr. Ibebuchi did not introduce any exhibits, nor did he call any witnesses on his behalf.  On April 3, 2020, Judge Pearson issued an opinion containing his findings of fact and concluding that Mr. Ibebuchi had committed all the alleged violations.

Mr. Ibebuchi filed exceptions to a number of the hearing judge's findings of fact and contested all of the hearing judge's conclusions of law.  Bar Counsel took one exception to the hearing judge's findings of fact.  On October 1, 2020, we heard oral arguments concerning those exceptions and the parties' recommendations as to an appropriate sanction.

### B.    Facts

When no exception is made to a hearing judge's finding of fact, we accept it as established.  Maryland Rule 19-741(b)(2)(A).  When a party excepts to a finding, we must determine whether the finding is established by the requisite standard of proof—in

---

[2] Immediately prior to the commencement of the evidentiary hearing, the court heard arguments of counsel in connection with Bar Counsel's motion to strike Mr. Ibebuchi's untimely response to the Petition.  Mr. Ibebuchi did not file a response to the Petition until after Bar Counsel filed a motion for order of default.  Bar Counsel requested that the court strike his untimely response, contending that it was prejudiced by Mr. Ibebuchi's lack of response throughout the investigation and leading up to the evidentiary hearing.  We mention the motions hearing to provide context for some of Mr. Ibebuchi's exceptions.  In his exceptions, Mr. Ibebuchi refers to some of the arguments that he made in the motions hearing, as well as his opening statement, as his "testimony."  Despite finding Mr. Ibebuchi's excuses for his failing to provide Bar Counsel with any information or explanation during the two and one-half year investigation "wholly inadequate and insufficient[,]" and determining that "from a legal standpoint[, Bar Counsel] is well grounded in their position that the motion to strike should be granted[,]" the hearing judge denied Bar Counsel's motion to strike from "an equitable standpoint" to "hear the full breadth and depth" of Mr. Ibebuchi's defense.

3

the case of an allegation of misconduct, clear and convincing evidence. Maryland Rules 19-741(b)(2)(B), 19-727(c). The standard of review for a hearing judge's factual findings where a party excepts to the findings is the clearly erroneous standard. *Attorney Grievance Comm'n v. Chanthunya*, 446 Md. 576, 588 (2016). We review for clear error a hearing judge's findings of fact, giving due regard to the hearing judge's opportunity to assess the credibility of the witnesses. Maryland Rule 19-741(b)(2)(B). A factual finding is not clearly erroneous "if there is any competent material evidence to support it." *Attorney Grievance Comm'n v. McDonald*, 437 Md. 1, 16 (2014) (cleaned up). We summarize below the hearing judge's findings of fact and other undisputed matters in the record, as they pertain to the alleged violations. We address Mr. Ibebuchi's exceptions, as well as Bar Counsel's exception, in relation to the findings to which they pertain.

*Mr. Ibebuchi's Law Practice*

Mr. Ibebuchi was admitted to the Bar of the State of Maryland on December 14, 2005.[3] During the time period that spans the client matter involved in this proceeding, Mr. Ibebuchi maintained an office for the practice of law in Greenbelt, Maryland.

---

[3] The hearing judge found that Mr. Ibebuchi did not begin to actively practice law in this State until 2016. Bar Counsel takes exception to this finding, pointing out that there is no evidence in the record concerning when Mr. Ibebuchi began to actively practice. Based upon our independent review of the record, we agree. Mr. Ibebuchi failed to put forth any testimony or evidence specifying when he began to practice law in Maryland. The only reference to Mr. Ibebuchi's length of practice was during the hearing on Bar Counsel's motion to strike. As part of his argument attempting to justify his inaction in connection with Mr. Morales' case, Mr. Ibebuchi stated that "I had been in practice for a very short period of time up to that point[.]" We determine that this statement is insufficient evidence to establish that Mr. Ibebuchi did not "begin to actively practice law in this State until 2016." Accordingly, we sustain Bar Counsel's exception on this finding.

*Representation of Mr. Morales*

Mr. Morales is a native of Guatemala. Spanish is Mr. Morales' first language. He cannot speak or read English[4] and testified through an interpreter at the evidentiary hearing. On June 7, 2015, Mr. Morales was the at-fault driver in a multi-vehicle collision in Prince George's County, Maryland. At the time of the accident, Mr. Morales did not have insurance. Carlos Garmendez, the driver of one of the other vehicles, sought uninsured motorist coverage from his insurance provider, State Farm Mutual Automobile Insurance ("State Farm"). State Farm denied Mr. Garmendez's claim. On June 16, 2016, Mr. Garmendez filed suit against State Farm in the District Court of Maryland sitting in Prince George's County. State Farm filed a third-party complaint against Mr. Morales.

On July 6, 2017, Mr. Morales appeared without counsel for trial. The court postponed the matter until October 13, 2017 and instructed Mr. Morales to obtain counsel. Mr. Morales contacted the Office of the Public Defender, seeking representation. The Office of the Public Defender provided Mr. Morales with Mr. Ibebuchi's contact information. On July 14, 2017, State Farm served interrogatories on Mr. Morales.

On October 5, 2017, Mr. Morales met with Mr. Ibebuchi and executed a retainer agreement for a flat fee of $2,250. During the meeting, Mr. Morales' friend, "Felipe,"

---

[4] Mr. Ibebuchi excepts to the hearing judge's finding that Mr. Morales cannot speak or read English and points out that Mr. Morales testified that he understood approximately 10% of English. Mr. Ibebuchi's exception is overruled. Mr. Morales also testified that he cannot read or write in English. We determine that the hearing judge's characterization of Mr. Morales' lack of fluency and understanding of the English language is accurate and supported by clear and convincing evidence.

served as an interpreter and explained the provisions of the retainer agreement to Mr. Morales. The agreement required an initial payment of $1,000 and subsequent payments of $650, to be paid by November 1, 2017, and $600, to be paid by December 1, 2017. Mr. Morales made the initial $1,000 payment to Mr. Ibebuchi on October 6, 2017. The retainer agreement was written in English. Mr. Ibebuchi did not provide Mr. Morales with a Spanish translation.[5]

During the pendency of Mr. Ibebuchi's representation of Mr. Morales, Mr. Ibebuchi communicated with Mr. Morales in English and required Mr. Morales to rely on his friend, Felipe, for translation services. Felipe attended all the meetings between Mr. Ibebuchi and Mr. Morales. Mr. Morales also utilized Google Translate to communicate with Mr. Ibebuchi by text message.

On October 13, 2017, Mr. Ibebuchi entered his appearance in Mr. Morales' case, and appeared at a hearing in the District Court. Mr. Ibebuchi and State Farm's counsel requested a continuance, as they had both recently entered their appearances, and there was outstanding discovery. The court granted the continuance. On October 17, 2017, the court rescheduled the matter for November 29, 2017 at 1:15 p.m.

---

[5] Mr. Ibebuchi excepts to the hearing judge's factual finding that Mr. Ibebuchi failed to provide Mr. Morales with a Spanish translation of the retainer agreement. We overrule Mr. Ibebuchi's exception. The judge's finding is consistent with the undisputed evidence that Mr. Ibebuchi did not provide Mr. Morales with a written copy of the agreement in Spanish, nor did he supply a translator. However, as discussed *infra*, we do not find that Mr. Ibebuchi violated any professional rule based upon this finding.

6

On November 14, 2017, State Farm filed a motion for sanctions against Mr. Morales for failure to answer interrogatories. A copy of the motion for sanctions was mailed to Mr. Ibebuchi. Mr. Ibebuchi failed to draft or complete answers to interrogatories on behalf of Mr. Morales.[6] Mr. Ibebuchi also failed to respond to the motion for sanctions on Mr. Morales' behalf.[7]

---

[6] Mr. Ibebuchi excepts to the hearing judge's finding that he failed to draft or complete answers to interrogatories on his client's behalf. Mr. Ibebuchi argues that the factual finding is "incomplete and misleading." He contends that discovery was not completed because Mr. Morales failed to meet with him. Mr. Ibebuchi directs us to his cross-examination of Mr. Morales, during which Mr. Morales admitted that a meeting had been set up to complete the interrogatories and that Mr. Morales and Felipe had arrived late, causing the meeting to be postponed. On cross-examination, Mr. Morales also agreed that Mr. Ibebuchi had contacted him "numerous times" (a phrase used by Mr. Ibebuchi) and admitted that the meeting never occurred and that he did not recall why. Despite Mr. Morales' acknowledgement that he arrived late to one meeting and that Mr. Ibebuchi had contacted him, we determine that the hearing judge's factual finding is supported by clear and convincing evidence and overrule this exception. The hearing judge is entitled to significant deference in assessing the credibility of the witnesses and picking and choosing from the evidence presented and the inferences to be drawn from that evidence. *See Attorney Grievance Comm'n v. Page*, 430 Md. 602, 627 (2013). The hearing judge was unpersuaded by Mr. Ibebuchi's attempt to shift blame for the failure to provide discovery responses to Mr. Morales—a client who cannot read or write English and who retained Mr. Ibebuchi to provide legal services in connection with this matter.

Bar Counsel admitted into evidence a copy of Mr. Ibebuchi's client file for Mr. Morales. The file included a letter dated October 23, 2017 from counsel for State Farm addressed to Mr. Ibebuchi which stated "[e]nclosed is a copy of the interrogatories served upon your client prior to your, or my, entry into the case. Responses are well overdue. Please have your client respond to them as soon as possible." Mr. Ibebuchi's file also included a copy of the motion for sanctions that had been filed with the court and mailed to Mr. Ibebuchi on November 9. As the attorney of record in Mr. Morales' case, Mr. Ibebuchi knew or should have known that it was important to deliver answers to interrogatories as soon as possible, particularly given the pending motion for sanctions. There is no evidence in the record that Mr. Ibebuchi explained to Mr. Morales the urgency of responding to the overdue discovery requests. It is counsel's role to explain the importance of responding to discovery and the effect of a motion for sanctions to his or her client, and even more so where the client speaks no English and is unfamiliar with the legal

system. There is substantial evidence in the record to support the trial judge's conclusion that Mr. Ibebuchi failed to respond to the outstanding discovery and that the failure was not excused by any delay or conduct by Mr. Morales. Mr. Ibebuchi's exception is overruled.

[7] The hearing judge found that Mr. Ibebuchi failed to advise Mr. Morales about the motion for sanctions. Mr. Ibebuchi excepted to this finding. Mr. Ibebuchi points out that, in response to Bar Counsel's questions, Mr. Morales testified that he provided a copy of the motion for sanctions to Mr. Ibebuchi when he met with Mr. Ibebuchi on October 5— the day that Mr. Morales signed the retainer agreement. Based upon our review of the record, it appears that Mr. Morales was mistaking the *motion for sanctions*—which was filed over a month after Mr. Morales' October 5 meeting with Mr. Ibebuchi—for the *interrogatories*, which were served on Mr. Morales *prior* to the entry of Mr. Ibebuchi's appearance. Mr. Morales' testimony on this point arose during a confusing line of questioning by Bar Counsel in which Bar Counsel asked Mr. Morales about "working on" responses to the "motion for sanctions." In context, it appears that Bar Counsel intended to ask about Mr. Morales working on responses to the interrogatories. In response to this line of questioning, Mr. Morales initially testified that he provided a copy of the motion for sanctions to Mr. Ibebuchi, and admitted that he "work[ed] on the motion for sanctions with Mr. Ibebuchi[.]" Later in his testimony, when asked again about the motion for sanctions, Mr. Morales testified that "*I don't remember if I received it really*." (Emphasis added). When Mr. Ibebuchi cross-examined Mr. Morales about his testimony that he provided Mr. Ibebuchi with a copy of the motion for sanctions, Mr. Morales replied that "I got confused . . . . There was a confusion with this paper, with this paper right here" (referring to his previous testimony concerning the motion for sanctions). Mr. Morales' confusion is understandable given the muddled line of questioning and Mr. Morales' language barrier. That being said, considering that there is no evidence in the record that Mr. Ibebuchi failed to provide his client with the copy of the motion for sanctions, we shall sustain Mr. Ibebuchi's exception to this finding.

Mr. Ibebuchi also excepts to the hearing judge's factual finding that he failed to file a response to the motion for sanctions. Mr. Ibebuchi asserts that the hearing judge's finding is "incomplete, misleading[, and] irrelevant." Mr. Ibebuchi attempts to shift the blame for his dereliction of services onto Mr. Morales, pointing us to Mr. Morales' testimony in which he admitted that he arrived late to one meeting, which had to be rescheduled as a result. We overrule Mr. Ibebuchi's exception. It is undisputed that Mr. Ibebuchi never filed a response to the motion for sanctions. The motion was served on Mr. Ibebuchi and was filed over one month after Mr. Ibebuchi's appearance was entered. Mr. Ibebuchi's client file contained a copy of the motion for sanctions. We determine that Mr. Ibebuchi's attempt to blame his client for his failure to respond to a motion for sanctions is without merit. It is the attorney's duty to file appropriate responses to motions. Mr. Ibebuchi also makes a "no harm, no foul" argument that, asserting that in light of the default judgment

On November 28, 2017 at 6:14 p.m., Mr. Morales sent Mr. Ibebuchi a text message stating "Tomorrow. I have court," along with a picture of a notice of a court hearing. The notice stated that the proceeding originally scheduled for October 13, 2017 was rescheduled for November 29, 2017 at 1:15 p.m. Mr. Ibebuchi texted Mr. Morales, stating that he "never received this from the Court." Mr. Morales replied, "What to do then?" Mr. Morales sent another text message to Mr. Ibebuchi at 7:23 p.m. stating, "I need an answer." Mr. Ibebuchi replied, "I don't think we have court tomorrow. But I will call them tomorrow morning to confirm. And I'll call or text you to let you know."

On November 29, 2017 at 10:57 a.m., Mr. Morales sent Mr. Ibebuchi a text message stating, "I need to know what's going to happen with today's court." At 11:39 a.m., Mr. Ibebuchi informed Mr. Morales that "[w]e don't have court today. It was postponed from last time, but we don't have a new court date yet. But it isn't today." On November 29, Mr. Morales also paid the additional $650.00 toward the retainer.

On November 29 at 1:15 p.m., the District Court called the case for trial. State Farm's counsel was present, but neither Mr. Ibebuchi nor Mr. Morales appeared.[8] The

entered against Mr. Morales, his failure to file a response to the motion for sanctions is "irrelevant." We find this argument equally unavailing. Where an attorney fails to perform basic services—by failing to file a response to a motion for sanctions and subsequently failing to show up for court resulting in a default judgment—the latter nonperformance does not excuse the former. The hearing judge's finding is supported by clear and convincing evidence. Mr. Ibebuchi's exception is overruled.

[8] Mr. Ibebuchi excepts to the hearing judge's finding that he failed to appear at the November 29 hearing, and argues that the finding is "misleading." Mr. Ibebuchi directs us to his opening statement during which he told the hearing judge that he called the court on the morning of the hearing and was given incorrect information. Mr. Ibebuchi asserts that the hearing judge erred because the court did not specifically "make a finding of the

9

court entered a default judgment against Mr. Morales in the amount of $15,000. On November 30, the court mailed notice of default judgment to Mr. Ibebuchi. Mr. Ibebuchi failed to advise Mr. Morales of the judgment.

On December 7, Mr. Morales sent a text message to Mr. Ibebuchi, stating, "I need to know when the new court is going to be." Mr. Ibebuchi failed to respond to the text message. On January 8, 2018, Mr. Morales sent Mr. Ibebuchi two text messages. The first message stated: "Hi, I'm Carlos Morales. I want to know how my case is going." The second stated: "I do not know anything about the case." Mr. Ibebuchi failed to respond to these texts in any manner.

On February 22, 2018, Mr. Morales received notice from the MVA that his driving and registration privileges would be suspended if he did not satisfy the judgment by March 15, 2018. Upon receiving the MVA notice, Mr. Morales learned about the default judgment for the first time. After receiving the notice, Mr. Morales contacted Mr. Ibebuchi, who advised Mr. Morales that he would try to reopen the case. However, Mr. Ibebuchi failed to file a motion for reconsideration or a motion to vacate the default judgment or take any other action in connection with the default judgment that had been entered against his client.

---

credibility of [his] explanation." We overrule Mr. Ibebuchi's exception. It is undisputed that neither Mr. Ibebuchi nor his client appeared on November 29. The hearing judge was not required to credit Mr. Ibebuchi's explanation that he telephoned the clerk's office and was given incorrect information. Ordinarily, when assessing the hearing judge's findings of fact, we "give due regard to the opportunity of the hearing judge to assess the credibility of witnesses." Maryland. Rule 19-741(b)(2)(B). Moreover, the hearing judge is not required to comment on every piece of evidence or testimony, identifying each statement the court determines to be not credible.

Mr. Ibebuchi failed to provide Mr. Morales with a refund of any portion of the fee paid by Mr. Morales for his services in connection with the representation. Mr. Morales eventually retained successor counsel to represent him in the matter.

*Bar Counsel's Investigation*

On April 8, 2018, Mr. Morales filed a complaint with the AGC. By letter dated April 13, 2018, Bar Counsel wrote to Mr. Ibebuchi, provided a copy of Mr. Morales' complaint, and requested a written response no later than May 4, 2018. Bar Counsel sent the letter to Mr. Ibebuchi's office, which is located in Greenbelt. After receiving no response, Bar Counsel wrote to Mr. Ibebuchi on May 17, enclosing its previous communication and requesting a response by June 7. After receiving no response, on June 25, Bar Counsel sent a third letter, enclosing the previous April and May communications, and requesting a written response by July 3. Each of the letters was sent to Mr. Ibebuchi's office in Greenbelt.

On August 1—over four months after Bar Counsel's initial letter—Mr. Ibebuchi wrote to Bar Counsel and stated that he was "still working on the response to [Bar Counsel's] inquiry." Mr. Ibebuchi further stated, "I am in the process of finishing this and sending the response to [Bar Counsel's] office. I appreciate [Bar Counsel's] patience and my response will be provided very shortly."

On August 21, having received no additional substantive response, Bar Counsel wrote to Mr. Ibebuchi again and notified him that the matter had been docketed for further investigation. Bar Counsel requested that Mr. Ibebuchi submit a written response by September 5. Bar Counsel also requested that Mr. Ibebuchi provide a complete copy of

Mr. Morales' client file and an explanation for his failure to respond to Bar Counsel's prior correspondence. Bar Counsel once again sent the letter to Mr. Ibebuchi's office in Greenbelt.

On October 4, Bar Counsel investigator Cheryl Trivelli interviewed Mr. Ibebuchi at his Greenbelt office. Mr. Ibebuchi ended the interview after about 15 minutes and stated to Ms. Trivelli that he "had to go to the Howard County Courthouse." Mr. Ibebuchi agreed to continue the interview on the following day. On October 5, Mr. Ibebuchi appeared at Bar Counsel's office in Annapolis to continue the interview. At the October 5 interview, Mr. Ibebuchi provided a copy of Mr. Morales' client file, but failed to provide a written response to any of Bar Counsel's other requests for information.

## II

### Violations of the Rules of Professional Conduct

The hearing judge concluded that Mr. Ibebuchi had committed all the violations pursued by the AGC. Mr. Ibebuchi filed exceptions to those conclusions. Taking into consideration Mr. Ibebuchi's exceptions, we review the hearing judge's conclusions de novo. Maryland Rule 19-741(b)(1).

*Competence and Diligence—Failing to Satisfy the Fundamentals*

An attorney's obligation to provide "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.1. The hearing judge determined that Mr. Ibebuchi violated Rule 1.1 when he: (1) failed to respond to discovery requests; (2) failed to file a response to the motion for sanctions; (3) failed to appear at the November 29, 2017 merits hearing; (4)

12

failed to advise Mr. Morales of the default judgment or file a motion to vacate the judgment; and (5) failed to assist Mr. Morales with the MVA suspension. We agree with the hearing judge that Mr. Ibebuchi violated Rule 1.1. As we have previously explained, "[c]ompetency includes, 'at a minimum, the attorney's presence at any court proceeding for which he or she was retained, absent an acceptable explanation for that attorney's absence.'" *Attorney Grievance Comm'n v. Thomas*, 440 Md. 523, 551 (2014) (quoting *Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 403 (2001)). "If an attorney 'fails to act or acts in an untimely manner, resulting in harm to his or her client,' generally this Court finds a violation of [Rule] 1.1." *Id.* at 551 (quoting *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012)). Mr. Ibebuchi's failure to appear, followed by his complete inaction on his client's behalf, caused direct and material harm to Mr. Morales.

The hearing judge found that the violations of Rule 1.1 (Competence) and Rule 1.4 (Communication) discussed *supra*, constituted a violation of Rule 1.3 (Diligence). Rule 1.3 requires that an attorney "act with reasonable diligence and promptness in representing a client." An attorney may violate Rule 1.3 by doing "nothing whatsoever to advance the client's cause or endeavor." *Attorney Grievance Comm'n v. Bahgat*, 411 Md. 568, 575 (2009). It is hard to identify what, if anything, Mr. Ibebuchi did to advance Mr. Morales' case. To the contrary, his inaction resulted in the entry of a default judgment against Mr. Morales in the amount of $15,000. Mr. Ibebuchi failed to appear for the November 29 hearing, failed to respond to his client's inquiries concerning the status of his case in the ensuing two and one-half months after the hearing, and failed to file a motion to vacate the entry of default after learning of the existence of the default judgment against his client.

Mr. Ibebuchi's complete failure to take any action on behalf of Mr. Morales constitutes a violation of Rule 1.3.[9]

*Failure to Communicate*

Rule 1.4(a)(2) and (3) provides that "[a]n attorney shall . . . keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information[.]" Additionally, Rule 1.4(b) provides that "[a]n attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The hearing judge found that Mr. Ibebuchi violated Rule 1.4(a) and (b) when he: (1) failed to make reasonable efforts to communicate with Mr. Morales in Spanish and instead relied upon Mr. Morales to find a means to translate his English language communications; (2) failed to provide Mr. Morales with a Spanish translation of the retainer agreement; (3) failed to advise Mr. Morales that a motion for sanctions had been filed;[10] (4) failed to advise Mr. Morales of the default judgment; and (5) failed to respond to Mr. Morales' numerous requests for information.

---

[9] Even if we were to accept Mr. Ibebuchi's version of events on the date of the trial—that he called the clerk's office on the morning of the trial and was told that the trial was not scheduled for that day (which we are unwilling to find in light of the hearing judge's credibility determinations)—his explanation does not account for the undisputed evidence of two and one-half months of inaction on his client's case and complete lack of communication with his client. From the date of the November 29, 2017 hearing, until Mr. Morales received the MVA suspension notice on February 22, 2018 in which he discovered that a default judgment had been entered, Mr. Ibebuchi performed no services for his client and did not respond to his client's texts. Mr. Ibebuchi's inactions demonstrate a clear violation of Rules 1.1 and 1.3.

[10] As discussed in note 7, given the lack of evidence that Mr. Ibebuchi failed to provide Mr. Morales with a copy of the motion for sanctions, and the confusing testimony

14

Mr. Ibebuchi excepts to the hearing judge's conclusion that he violated Rule 1.4 because he failed to provide Mr. Ibebuchi with a copy of the retainer agreement in Spanish and failed to make reasonable efforts to communicate with Mr. Morales in Spanish. Although Mr. Ibebuchi did not provide a copy of the retainer agreement in Spanish, the undisputed testimony at trial was that Mr. Morales' friend, Felipe, attended the meeting between Mr. Ibebuchi and Mr. Morales, and translated the retainer agreement and explained the terms to him. Mr. Morales testified that he trusted Felipe, and that Felipe can read and write English. Mr. Morales admitted that Felipe assisted with explaining the contents of the retainer agreement, which Mr. Morales signed after Felipe explained its terms. Mr. Morales also testified that he never met with Mr. Ibebuchi without Felipe in attendance. Mr. Morales also confirmed that he was able to communicate with Mr. Ibebuchi through either group texts (where Felipe was included), or through text messages using Google Translate. Under these circumstances, we do not find that Mr. Ibebuchi's failure to provide a copy of the retainer agreement in Spanish or his failure to secure independent translation services constitutes a violation of Rule 1.4.

Although we sustain Mr. Ibebuchi's exceptions pertaining to a Rule 1.4 violation in connection with the language barrier issues described above, we nonetheless determine that Mr. Ibebuchi violated Rule 1.4 by failing to advise Mr. Morales of the entry of the default judgment, by failing to respond to Mr. Morales' texts requesting information about his case, and by failing to follow up with Mr. Morales after telling him that he would try to

_____

on this point, we sustain Mr. Ibebuchi's exception to the hearing judge's finding of fact and accordingly, do not find a violation of professional rules on this issue.

15

have the case reopened. The record is devoid of any communications from Mr. Ibebuchi between November 29, 2017—the date that default judgment was entered against Mr. Morales and February 22, 2018—when Mr. Morales independently learned about the default judgment from the MVA suspension notice. The hearing judge's conclusion that Mr. Ibebuchi violated Rule 1.4 is supported by clear and convincing evidence.

*Fees—Failure to Earn and Failure to Return*

Rule 1.5(a) provides that "[a]n attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses[]" and describes the factors that determine the reasonableness of a fee. Rule 1.16(d) requires an attorney to refund any unearned fee to the client upon the termination of representation. We concur with the hearing judge that Mr. Ibebuchi violated these rules. We agree with the hearing judge's conclusion that, although the initial fee collected in the amount of $1,650 may have initially been reasonable, Mr. Ibebuchi failed to earn the fee when he failed to perform any legal services of value for Mr. Morales.[11] A fee that is reasonable at the outset of representation can become unreasonable if the attorney fails to earn it. *See*

---

[11] Mr. Ibebuchi excepts to the hearing judge's conclusion that he violated Rule 1.5 by failing to perform legal services of value for Mr. Morales. Mr. Ibebuchi asserts that the evidence establishes that "up until the time of the miscommunicated trial date and the entry of the default judgment," he was performing "adequate legal services[.]" We overrule Mr. Ibebuchi's exception and determine that there is clear and convincing evidence to support a violation of Rule 1.5. Although there is evidence in the record that Mr. Ibebuchi performed some legal services, such as entering his appearance, securing a continuance of Mr. Morales' trial date, and scheduling a meeting with Mr. Morales and Felipe to complete interrogatories, these services are not commensurate with a $1,650 fee, particularly in light of the totality of Mr. Ibebuchi's representation (or lack thereof), which ultimately caused significant harm to his client.

*Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 224 (2012) (fee became unreasonable due to the attorney's neglect of the matter and abandonment of representation); *Attorney Grievance Comm'n v. Patterson*, 421 Md. 708, 732 (2011) (an otherwise reasonable fee became unreasonable when the attorney failed to represent the client with competence and diligence). We also agree with the hearing judge's conclusion that Mr. Ibebuchi violated Rule 1.16(d) when he failed to refund any portion of the unearned fee to Mr. Morales.[12] *See Attorney Grievance Comm'n v. Stinson*, 428 Md. 147 (2012) (attorney violated Rule 1.16(d) by not refunding unearned fees upon termination of representation). There is clear and convincing evidence that Mr. Ibebuchi violated Rules 1.5 and 1.16(d).

*Failure to Advance Litigation Efforts on Behalf of Client*

Rule 3.2 provides that "[a]n attorney shall make reasonable efforts to expedite litigation consistent with the interests of the client." Rule 3.4(d) prohibits an attorney from "fail[ing] to make reasonably diligent effort[s] to comply with a legally proper

---

[12] Mr. Ibebuchi excepts to the hearing judge's conclusion that he violated Rule 1.16(d) by failing to refund any portion of the unearned fee to Mr. Morales. Mr. Ibebuchi asserts that he attempted to provide Mr. Morales with a "full refund" of the fees. Based upon our review of the record, there is clear and convincing evidence to support the conclusion that Mr. Ibebuchi failed to refund the fees. On cross-examination, Mr. Morales admitted that he had received one telephone call from a person speaking in Spanish purporting to speak on behalf of Mr. Ibebuchi indicating that Mr. Ibebuchi was trying to refund Mr. Morales' money. Mr. Morales testified that the telephone call had been received approximately ten days prior to the evidentiary hearing. Mr. Morales also testified that Mr. Ibebuchi tried to give him an envelope in the hallway prior to the hearing, which Mr. Morales did not accept, stating "I don't want anything today." Mr. Ibebuchi's purported attempts to refund the fees almost two years after the conclusion of the representation fall well short of satisfying the requirements of Rule 1.16(d). This exception is overruled.

17

discovery request by an opposing party." These rules ensure that the litigation process is undertaken in a manner that promotes the efficient administration of justice and fairness to the parties. The hearing judge determined that Mr. Ibebuchi violated Rules 3.2 and 3.4(d) for the same reasons discussed in connection with the violations of Rules 1.1 and 1.3. We determine that the hearing judge's conclusion that Mr. Ibebuchi violated Rules 3.2 and 3.4(d) is supported by clear and convincing evidence. As noted *supra*, Mr. Ibebuchi entered his appearance in Mr. Morales' case prior to his attendance at the hearing on the motion for a continuance that was held on October 13, 2017. Bar Counsel's trial exhibits reflect that on October 23, 2017, State Farm provided Mr. Ibebuchi with copies of the interrogatories that had been served upon Mr. Morales prior to Mr. Ibebuchi's entry into the case and advised Mr. Ibebuchi that the interrogatories "are well overdue." Counsel for State Farm requested that Mr. Ibebuchi have his client "respond to them as soon as possible." After no answers to interrogatories were forthcoming, State Farm filed a motion for sanctions. The certificate of service reflects that the motion was mailed to Mr. Ibebuchi on November 9. Mr. Ibebuchi did not file a response to the motion on his client's behalf. Mr. Ibebuchi's failure to complete discovery, and failure to respond to the pending motion for sanctions, constitutes a violation of Rules 3.2 and 3.4(d).

*Failure to Respond to Bar Counsel's Request for Information*

In connection with an investigation, cooperation with Bar Counsel is paramount. Rule 8.1(b) provides in part that, in connection with a disciplinary matter, an attorney shall not "knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary

18

authority[.]" We agree with the hearing judge that Mr. Ibebuchi violated Rule 8.1 pertaining to disciplinary matters. Mr. Ibebuchi excepts to this conclusion of law, asserting that his lack of response was not undertaken in "bad faith" but was the result of his attempts to investigate the matter in order to provide truthful and accurate information to Bar Counsel. We overrule Mr. Ibebuchi's exception. The rule does not require proof of bad faith—it simply requires that the attorney "knowingly fail to respond to a lawful demand for information" from Bar Counsel. Over the course of five months, Mr. Ibebuchi received five separate letters from Bar Counsel requesting a written response to Mr. Morales' complaint. His only written response was on August 1, when he advised that he was in the "process of finishing" his response to Bar Counsel and that he was thankful for Bar Counsel's patience. No response was forthcoming. We find unavailing Mr. Ibebuchi's excuse that the client matter giving rise to professional grievance was "complicated" and that his delayed response was the result of his "attempt[ing] to figure out what happened[]" in order to "prepare a comprehensive response to Mr. Morales' complaint." Bar Counsel's investigation involved the representation of a single client in a relatively run-of-the-mill tort defense of an automobile accident in a District Court action. We determine that Mr. Ibebuchi was aware of the investigation and failed to provide written responses in a timely manner. There is clear and convincing evidence of a violation of Rule 8.1(b). *See Attorney Grievance Comm'n v. Bellamy*, 453 Md. 377, 403 (2017) (finding that the attorney violated Rule 8.1(b) by failing to provide any substantive response to Bar Counsel's reasonable requests for information).

19

*General Misconduct Violations*

Finally, we address two general rules—Rules 8.4(a) and 8.4(d)—the former of which is "easy to apply but . . . adds nothing to the discussion" and the latter of which is "broadly and vaguely phrased but often goes to the heart of the misconduct." *See Attorney Grievance Comm'n v. Yi*, 470 Md. 464, 498 (2020). Under Rule 8.4(a), an attorney who violates any other disciplinary rule also violates this rule. Rule 8.4(d) provides that an attorney commits professional misconduct when he or she "engage[s] in conduct that is prejudicial to the administration of justice[.]" We agree with the hearing judge that Mr. Ibebuchi violated these rules, but only discuss Rule 8.4(d).

As the hearing judge summarized, Mr. Ibebuchi violated Rule 8.4(d) when he failed to respond to discovery requests, failed to file a response to the motion for sanctions, failed to appear at the November 29 merits hearing, failed to advise Mr. Morales of the default judgment or file a motion to vacate the judgment, failed to respond to Mr. Morales' texts requesting information about his case, and failed to assist Mr. Morales with the MVA suspension arising from the entry of the default judgment.[13] Mr. Ibebuchi failed to provide the bare minimum of services required by our professional rules, which casts a shadow on the profession as a whole and contributes to the erosion of public confidence in our legal system. There is clear and convincing evidence that this conduct violated Rule 8.4(d).

---

[13] For the reasons previously stated, we sustain Mr. Ibebuchi's exception to that portion of a violation of Rule 8.4 that pertains to the hearing judge's factual finding that Mr. Ibebuchi failed to make reasonable efforts to communicate with Mr. Morales in Spanish.

## III

## Sanction

Bar Counsel recommends that Mr. Ibebuchi be indefinitely suspended from the practice of law. During oral arguments, Mr. Ibebuchi stated that he believed a suspension of 30 to 60 days would be appropriate.

In an attorney discipline case, it is well settled that we select a sanction primarily with the purpose to protect the public and deter future misconduct rather than to punish the attorney. *Attorney Grievance Comm'n v. Woolery*, 456 Md. 483, 497–98 (2017). We evaluate each attorney grievance matter on its own merits, taking into consideration the particular facts and circumstances when fashioning the appropriate sanction. *Attorney Grievance Comm'n v. Hodes*, 441 Md. 136, 205–06 (2014). When considering the sanction to be imposed in a particular case, we typically consult the list of aggravating and mitigating factors developed by the American Bar Association. *See Attorney Grievance Comm'n v. Blatt*, 463 Md. 679, 707 n.19 (2019) (listing aggravating and mitigating factors).

*Aggravating and Mitigating Factors*

In this case, the hearing judge found one mitigating factor, namely, that Mr. Ibebuchi has no prior discipline.[14] The hearing judge found several aggravating factors,

---

[14] Mr. Ibebuchi excepted to the hearing judge's conclusion that he failed to prove any other mitigating factors. Specifically, Mr. Ibebuchi asserts that he proved at trial that he was inexperienced in the practice of law. Based upon our review of the record, Mr. Ibebuchi failed to establish his inexperience by a preponderance of the evidence. As previously noted, the only "evidence" that we glean from our review of the record is Mr. Ibebuchi's statement during the argument on Bar Counsel's motion to strike, in which he stated that he was "in a state of confusion" over his alleged lack of notice of Mr. Morales' trial because he "had been in practice for a very short period of time up to that point, and

21

specifically that Mr. Ibebuchi: (1) committed multiple offenses while representing Mr. Morales; (2) obstructed Bar Counsel's investigation by refusing to provide a substantive written response to the complaint and to Bar Counsel's multiple requests for information; (3) refused to acknowledge the wrongful nature of his conduct, and has instead attempted to place the blame on the conduct of Mr. Morales and opposing counsel; and (4) made no effort regarding restitution to Mr. Morales "until the virtual eve of the evidentiary hearing[.]" The hearing judge also determined that Mr. Morales is an immigrant who does not speak English fluently, which makes him a vulnerable victim. We agree with the hearing judge's conclusions with respect to the presence of one mitigating factor and the presence of several aggravating factors.

We agree with Bar Counsel that the appropriate sanction is indefinite suspension. Our decisions in prior attorney grievance cases, combined with our consideration of the mitigating factor and aggravating factors present in this case, support this sanction. *See Attorney Grievance Comm'n v. Kirwan*, 450 Md. 447, 466–67 (2016) (imposing a sanction of indefinite suspension where the attorney violated Rules 1.1, 1.3, 1.4(a)(2)–(3) and (b), 1.16(d), 8.1(b), and 8.4(a) and (d)). Although Mr. Ibebuchi states that he is remorseful, his explanation (or lack thereof) for his inaction on Mr. Morales' case, combined with his failure to appreciate the gravity of his deficient performance on behalf of Mr. Morales, and his failure to respond to Bar Counsel during the pendency of its investigation, is troubling

---

[] did not know exactly what had transpired[.]" We determine that this statement does not establish by a preponderance of the evidence that he was "inexperience[d] in the practice of law" as a mitigating factor. Mr. Ibebuchi's exception is overruled.

and reinforces our conclusion that an indefinite suspension is appropriate to protect the public and ensure the integrity of the bar. Indefinite suspension ensures that Mr. Ibebuchi is not permitted to practice law until this Court is satisfied that he is able to do so in a manner that is consistent with the MARPC. We have reiterated that indefinite suspension is not permanent, so Mr. Ibebuchi may apply for reinstatement under Maryland Rule 19-752. However, we decline to set a minimum length for this indefinite suspension because there is nothing in the record that would allow this court to "divine an appropriate minimum 'sit out' period." *Id.* at 467 (quoting *Attorney Grievance Comm'n v. Green*, 441 Md. 80, 102 (2014)).

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d) FOR WHICH JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST FERDINAND UCHECHUKWU IBEBUCHI.**