*Attorney Grievance Commission of Maryland v. David B. Mintz*, AG No. 21, September Term, 2025, Opinion by Booth, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT**

Respondent David B. Mintz violated Maryland Attorneys' Rules of Professional Conduct 1.1 (competence), 1.3 (diligence), 1.4(a) and (b) (communication), 1.5(a) (fees), 1.6 (diligence), 1.16(a) (declining or terminating representation), 3.2 (expediting litigation), 3.4(c) (fairness to opposing party and attorney), 8.1(b) (bar admission and disciplinary matters), and 8.4(a), (c), and (d) (misconduct). The violations occurred in connection with Mr. Mintz's representation of 14 clients in matters arising in the United States Bankruptcy Court for the District of Maryland, as well as his personal bankruptcy filings and his failure to pay state and federal taxes. Considering the nature of Mr. Mintz's misconduct and the various aggravating factors present, the Supreme Court of Maryland concluded that disbarment was the appropriate sanction.

Case No.: C-15-CV-24-006482
Argued: September 4, 2025

IN THE SUPREME COURT

OF MARYLAND

AG No. 21

September Term, 2024

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DAVID B. MINTZ

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

Opinion by Booth, J.

Filed: October 24, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

The Attorney Grievance Commission of Maryland ("the Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, David B. Mintz, a member of the Maryland Bar, arising out of his representation of 14 clients in the United States Bankruptcy Court for the District of Maryland ("Bankruptcy Court"), as well as conduct in connection with his own bankruptcy filings and tax matters. The Commission asserted that Mr. Mintz's conduct violated Maryland Attorneys' Rules of Professional Conduct ("MARPC")[1] Rule 1.1 (competence), Rule 1.3 (diligence), Rule 1.4 (a) and (b) (communication), Rule 1.5(a) (fees), Rule 1.16(a) (declining or terminating representation), Rule 3.2 (expediting litigation), Rule 3.4(c) (fairness to opposing party and attorney), Rule 8.1(a) and (b) (bar admission and disciplinary matters), and Rule 8.4(a), (c), and (d) (misconduct).

The hearing judge assigned to this matter found by clear and convincing evidence that Mr. Mintz committed all but one of the violations alleged by the Commission.[2] The hearing judge also determined the presence of eight aggravating factors and one mitigating factor. Neither party filed exceptions. Bar Counsel recommended the sanction of

---

[1] For ease of reference and comparison with our prior opinions and those of other courts, we will refer to the MARPC rules using the numbering of the ABA model rules, as permitted by Rule 19-300.1(22).

[2] In the Petition, Bar Counsel charged Mr. Mintz with violating Rule 8.1(a), which states, in pertinent part, that in connection with a disciplinary matter, an attorney shall not "knowingly make a false statement of material fact[.]" The hearing judge concluded that "insufficient evidence was discovered during the investigation to support" a finding of a Rule 8.1(a) violation. Bar Counsel did not file an exception to the hearing judge's conclusion, and we do not consider it further.

disbarment, which we imposed by per curiam order on September 4, 2025, following oral argument, which Mr. Mintz did not attend. We now explain the reasons for our order.

**I**

**Procedural Background**

The Commission filed the Petition against Mr. Mintz on November 19, 2024. In January 2025, Mr. Mintz was personally served with the Petition, as well as interrogatories, request for production of documents, and request for admission of facts and genuineness of documents. After Mr. Mintz failed to answer the Petition, or respond to the discovery propounded by the Commission, the Commission moved for an order of default in February. The hearing judge granted the motion, and Mr. Mintz did not move to vacate the order of default.

Mr. Mintz failed to appear at a scheduling hearing in February. The hearing judge entered a scheduling order, which set a pre-trial conference for April 11 and a trial date for April 22. Mr. Mintz failed to appear at the pre-trial conference. Thereafter, the Commission filed a motion for judgment of default, as well as a motion for sanctions based upon Mr. Mintz's failure to respond to written discovery. Mr. Mintz failed to respond to the Commission's motions and failed to appear for trial. At the hearing on April 22, 2025, the hearing judge entered an order of default. The hearing judge also granted the motion for sanctions and ordered, among other things, that the averments in the Petition, as well as the admissions set forth in the Commission's request for admission, be deemed admitted. The hearing judge admitted the Commission's exhibits, which consisted of its First Request

2

for Admission of Facts and Genuineness of Documents, and the documents that were attached thereto.

The hearing judge issued findings of fact and conclusions of law on June 13, 2025. As noted above, neither party filed exceptions. Where, as here, no exceptions are filed, this Court may accept the factual findings of a hearing judge as established. Md. Rule 19-740(b)(2)(A). We choose to do so here. Accordingly, we treat as established the following facts, which the hearing judge found to have been proved by clear and convincing evidence.

## II

## Findings of Fact

Mr. Mintz was admitted to the Maryland bar on December 13, 1995. At all times relevant to this proceeding, Mr. Mintz exclusively specialized in bankruptcy matters and maintained an office for the practice of law in Columbia, Maryland, or out of his home in Rockville, Maryland. This case centers around Mr. Mintz's representation of numerous clients in bankruptcy matters, his personal bankruptcy filings, and his failure to pay state and federal taxes. We discuss each matter in turn.

### A. Client Complaints to Office of Bar Counsel

#### 1. Nilda Pacantara

Nilda Pacantara hired Mr. Mintz in June 2020 to file a petition for bankruptcy on her behalf. She signed a retainer agreement in which she agreed to pay Mr. Mintz a total fee of $4,000. She paid $1,000 at the time she signed the agreement. Mr. Mintz remained in communication with Ms. Pacantara for some time and returned some phone calls from creditors on her behalf. Between November 2020 and May 2021, however, Mr. Mintz did

3

not respond to Ms. Pacantara's attempts to reach him, and he never filed a bankruptcy petition on her behalf.

Ms. Pacantara filed a complaint with the Office of Bar Counsel on May 24, 2021. According to Ms. Pacantara, Mr. Mintz refunded the $1,000 retainer fee to her in November 2021 and informed her that he would continue her representation pro bono. Ms. Pacantara, however, was still unable to reach Mr. Mintz. She began to receive subpoenas "concerning her financial situation." At no time did Mr. Mintz communicate to Ms. Pacantara that he was unable to represent her.

### 2.    *Chika S. Olugbala*

Chika S. Olugbala hired Mr. Mintz in July 2018 to represent him in his bankruptcy matter. He signed a retainer agreement in which he agreed to pay Mr. Mintz $4,325 in exchange for Mr. Mintz's representation in a bankruptcy proceeding that Mr. Olugbala had previously filed pro se. The retainer agreement specifically listed Mr. Mintz's services to Mr. Olugbala, including appearances at meetings of creditors and confirmation hearings, and defending any motions filed for relief from the automatic stay. Mr. Mintz filed a motion to convert Mr. Olugbala's case to a Chapter 13 proceeding.

In April 2023, Nationstar Mortgage LLC moved for relief from the automatic stay as to Mr. Olugbala's personal residence. Objections were due in May, and notice was sent to Mr. Mintz. Mr. Mintz did not file a response, appear at the scheduled hearing, or inform Mr. Olugbala of the hearing. A second hearing was scheduled in June. Mr. Mintz once again failed to attend or inform his client of the hearing.

Mr. Olugbala filed a complaint with the Office of Bar Counsel on June 4, 2023. In an interview with a Bar Counsel investigator, Mr. Olugbala stated that he had made many phone calls and sent several emails and letters asking Mr. Mintz to contact him. Despite these attempts, Mr. Olugbala had not heard from Mr. Mintz since 2020. Mr. Mintz never communicated to Mr. Olugbala that he was unable to represent him in the bankruptcy matter, nor did he ever move to withdraw as counsel of record.

### B.     Complaints from the U.S. Bankruptcy Court

In September 2022, the United States Trustee of the United States Bankruptcy Court ("U.S. Trustee"), through the Chief Deputy Clerk of the United States District Court for the District of Maryland ("Chief Deputy Clerk"), made a complaint to the Office of Bar Counsel about Mr. Mintz. The Office of the U.S. Trustee supplemented the complaint on several subsequent occasions as it obtained additional information pertaining to Mr. Mintz's conduct. In each of the cases that the U.S. Trustee referred to Bar Counsel, Mr. Mintz's failure to act in his clients' matters resulted in the cases being dismissed or in rulings by the Bankruptcy Court that adversely affected his clients' interests.

Within the context of the complaint, the Chief Deputy Clerk explained that many of Mr. Mintz's cases at the time were Chapter 13 matters "in which a debtor frequently needs representation and the assistance of counsel not only at the inception of the case, but during the plan commitment period, which may be three to five years after the filing of a bankruptcy case."

On October 28, 2022, the U.S. Trustee filed an Amended Omnibus Motion to Review Conduct of David B. Mintz and the Law Office of David B. Mintz, P.C.,

5

Disallowance and Refund for Fees and Other Relief as may be Appropriate ("Omnibus Motion").[3] The Omnibus Motion sought review of Mr. Mintz's conduct in several bankruptcy cases. After an evidentiary hearing, the Bankruptcy Court granted the Omnibus Motion, and Mr. Mintz was ordered to disgorge fees to several clients.

The Chief Deputy Clerk advised Bar Counsel in February 2023 that the Bankruptcy Court had found Mr. Mintz to be in contempt of the order granting the Omnibus Motion for failing to disgorge fees. The Chief Deputy Clerk advised that the Bankruptcy Court ordered Mr. Mintz to appear at the Office of the United States Marshal on February 27, 2023. So long as he fully complied with the Disgorgement Order, Mr. Mintz could purge the contempt finding. Mr. Mintz neither complied with the Disgorgement Order nor appeared at the U.S. Marshal's office. The Chief Deputy Clerk's communications to Bar Counsel detailed Mr. Mintz's conduct in 12 client-related bankruptcy matters as follows.

1. *Brian Gruner*

In March 2022, Mr. Mintz entered his appearance and filed for Chapter 13 bankruptcy relief on behalf of Brian Gruner. According to the compensation disclosure that Mr. Mintz filed, Mr. Gruner paid Mr. Mintz $1,100 prior to the filing of the petition, and the total fee for legal services was $4,625. Mr. Mintz's petition was "bare bones" and required additional documents to be filed with the court. Mr. Mintz filed four motions for extension of time, all of which the court granted. In each instance, Mr. Mintz stated in his pleading that the need for an extension was due to "no fault of the debtor." Mr. Mintz

---

[3] The U.S. Trustee filed an Omnibus Motion on May 12, 2022. This motion was later amended in October, which is the operative motion we reference here.

failed to complete the required filing without requesting a fifth extension. Accordingly, the court entered an order dismissing the case for failure to complete the required filing. Mr. Gruner was forced to obtain another attorney and file another bankruptcy petition.

The U.S. Trustee filed a motion requesting that the Bankruptcy Court review Mr. Mintz's and his law firm's conduct in connection with Mr. Gruner's case in May 2022. The motion requested that the court order Mr. Mintz to disgorge the $1,100 paid by Mr. Gruner, which the court granted in June. After Mr. Mintz failed to disgorge the money, the court scheduled a show cause hearing. The court issued an order holding David B. Mintz, P.C., in contempt of court in August 2022. Mr. Mintz was ordered to appear at the Office of the U.S. Marshal in Greenbelt where he was to be held in custody unless he provided Mr. Gruner's tax documents in his possession and the quit claim deed to Mr. Gruner's house. Mr. Mintz did not turn himself in and was taken into custody by U.S. Marshals on September 12, 2022. He was released the same day when he disgorged the funds and provided the ordered documents.

### 2. Vanessa A. Hall

Vanessa A. Hall retained Mr. Mintz to file a bankruptcy petition to stop a foreclosure sale of her property, which was scheduled for February 19, 2022. After Mr. Mintz filed a "bare bones" petition on February 18, 2022, he failed to provide the requisite supplemental documentation. The court issued an order to show cause why it should not dismiss the case. Mr. Mintz filed a response, explaining that his failure to timely supplement the petition was due to improper calendaring of deadlines and failure to follow up with his client in a timely manner. He stated that "Debtor should not be penalized for the failings

7

of undersigned counsel." The court granted an extension for the filing of the required documents and sent notice to Mr. Mintz. After Mr. Mintz failed to file the supplemental documents during the extension, the court issued an order dismissing Ms. Hall's case.

Thereafter, in response to a motion filed by the U.S. Trustee, the court entered an order in May 2022 directing Mr. Mintz to show cause why attorney fees should not be disgorged. Mr. Mintz did not respond, and he did not recall disgorging the funds as the court later ordered.

### 3. Paulette Emilien

Paulette Emilien retained Mr. Mintz for his representation in a Chapter 13 case. She paid Mr. Mintz $500 to file the petition and agreed to pay him an additional $3,325 for his representation throughout the remainder of the matter. Mr. Mintz filed a Chapter 13 petition with the Bankruptcy Court in February 2021. He failed to appear at the scheduled hearing in March. Thereafter, the court issued an order denying the confirmation plan without leave to amend, a copy of which was sent to Mr. Mintz. Mr. Mintz filed a motion to reconsider and stated that he was "highly embarrassed to state that he missed the hearing because he incorrectly listed the wrong hearing date on his calendar." Mr. Mintz also stated in his motion that Ms. Emilien had attempted to attend the hearing and was apparently stuck in a waiting room due to possibly using a link for a previous hearing.

The court set a hearing date, but Mr. Mintz failed to appear. A second hearing was scheduled, and again, Mr. Mintz failed to appear. The court then issued an order directing Mr. Mintz to show cause as to why the $500 Ms. Emilien paid should not be refunded and the remaining $3,325 owed to him for his representation in the matter should not be

disallowed.  Despite the court's order that Mr. Mintz refund $500 to Ms. Emilien, he never refunded the fees. Mr. Mintz never communicated to Ms. Emilien that he was unable to represent her in her bankruptcy matter, nor did he withdraw his appearance in her case.

### 4.     *Mirta De La Rosa*

Mirta De La Rosa retained Mr. Mintz to represent her in a bankruptcy proceeding, agreeing to pay him $4,925 for his representation.  Mr. Mintz filed a "bare bones" petition on her behalf.  All documents were due on July 14, 2021.  Mr. Mintz filed a motion for an extension of time on July 16, 2021, which was granted with a new deadline of July 30, 2021.  Mr. Mintz filed a second motion to extend the time, which was again granted.  After Mr. Mintz failed to file the required documents during the second extension, the court dismissed Ms. De La Rosa's case, and the automatic stay in connection with her personal residence was lifted.  Although Mr. Mintz received notice of the order dismissing her case, he never informed Ms. De La Rosa.  Ms. De La Rosa learned of the dismissal through calls from her mortgage company beginning in October 2021.  Despite her repeated attempts to contact Mr. Mintz, he never informed her that he could no longer represent her, nor did he withdraw his appearance in her case.  Ms. De La Rosa retained a different attorney who then filed a motion to reopen her Chapter 13 case.

### 5.     *Tyeacha Counts*

Tyeacha Counts retained Mr. Mintz to represent her in a Chapter 13 case.  Ms. Counts paid Mr. Mintz $565 and agreed to pay an additional $4,060 for his representation in her Chapter 13 reorganization.  Mr. Mintz filed a Chapter 13 statement of current monthly and disposable income in April 2019.  In April 2021, Ms. Counts requested a

9

modified Chapter 13 plan, which was granted. Between April 2021 and April 2022, there was no activity in the case. In March 2022, the U.S. Trustee filed a motion to dismiss because Ms. Counts had not been making payments. Ms. Counts informed the court that she had unsuccessfully attempted to contact Mr. Mintz electronically and in person and, therefore, was unsure how to proceed with her case. A videoconference hearing was scheduled, but neither Mr. Mintz nor Ms. Counts appeared. The court issued a show cause order directing Mr. Mintz to appear at a hearing and explain why he had failed to appear. After Mr. Mintz failed to appear at the show cause hearing, the court ordered Mr. Mintz to disgorge any fees to Ms. Counts. Mr. Mintz never disgorged the fees as ordered by the court. At a later hearing, Ms. Counts appeared without counsel and consented to dismissal of her case. Mr. Mintz never informed Ms. Counts that he could no longer represent her, nor did he withdraw his appearance from her case.

### 6. *Donovan Grant*

Donovan Grant retained Mr. Mintz to represent him in a Chapter 13 proceeding. He paid Mr. Mintz $1,100 and agreed to pay an additional $3,525 for his representation throughout the remainder of the Chapter 13 case. In December 2018, Mr. Mintz filed a Chapter 13 petition on Mr. Grant's behalf. In November 2021, Mr. Grant's homeowners association moved for relief from the automatic stay in connection with Mr. Grant's home. In December 2021, the U.S. Trustee filed a motion requesting that the Bankruptcy Court issue a show cause order requiring an explanation why the debtor should not modify the plan or why the case should not be dismissed. Mr. Mintz failed to respond to the U.S. Trustee's motion. The court entered an order dismissing the case and terminating the

automatic stay. At no time did Mr. Mintz inform Mr. Grant that he was unable to continue to represent him, nor did he withdraw his appearance. After the dismissal of his case, Mr. Grant was required to hire new counsel and to file a new Chapter 13 case.

As part of the court's proceedings on the Omnibus Motion, the Bankruptcy Court ordered that Mr. Mintz disgorge fees to Mr. Grant in the amount of $4,625. Mr. Mintz never disgorged the fees as ordered.

### 7. *Judson Anglin*

Mr. Mintz represented Judson Anglin in his bankruptcy case. Mr. Anglin paid Mr. Mintz $1,300 in connection with the representation. Mr. Mintz filed a Chapter 7 petition on Mr. Anglin's behalf in October 2019, which proceeded to trial in February 2022. Mr. Mintz appeared for the first day of trial. Prior to the second day, Mr. Mintz filed an emergency motion to continue the second day of trial, stating that he had a "flu-like illness." After the second day of trial was rescheduled and prior to its commencement, creditor's counsel filed a motion with the court requesting approval of a consent settlement in which he noted that he was unable to reach Mr. Mintz.

### 8. *Novimbi Consolation Meriwether*

Novimbi Consolation Meriwether retained Mr. Mintz in 2015 to represent her in a bankruptcy matter and paid him $4,500 for his representation. Mr. Mintz filed a Chapter 13 petition on her behalf in March 2015. Mr. Mintz charged her an additional $1,100 in 2020, which was paid to him through the bankruptcy plan. In November 2021, JP Morgan Chase filed a motion for relief from the automatic stay with respect to Ms. Meriwether's residential property. Mr. Mintz failed to file any objections on Ms. Meriwether's behalf,

and consequently, the stay was terminated in January 2022. Because Mr. Mintz did not communicate this information to Ms. Meriwether, she only learned of the termination of the stay when she received a foreclosure notice on her home. Ms. Meriwether retained new counsel, who filed a motion to vacate the order, but the motion was denied. The court ordered Mr. Mintz to refund Ms. Meriwether $1,100, which remains unpaid. Mr. Mintz never told Ms. Meriwether that he was unable to continue to represent her, nor did he withdraw his appearance in her case.

9.      *William T. Patton, Jr.*

William T. Patton, Jr. hired Mr. Mintz to represent him in his Chapter 13 proceeding. Mr. Patton paid Mr. Mintz $1,100 and agreed to pay an additional $3,525 over the course of the representation. Mr. Mintz filed a "bare bones" petition on Mr. Patton's behalf in July 2019. In February 2020, M&T Bank moved for relief from the automatic stay with respect to Mr. Patton's residence. Mr. Mintz filed a response in March, and the bank's motion was withdrawn. In July 2020, GNMA c/o M&T Bank moved for relief from the automatic stay as to the same residence. Mr. Mintz filed an objection in July, as well as an opposition in August.

In April 2022, GNMA c/o M&T Bank filed a notice of intent to foreclose regarding Mr. Patton's home. Mr. Mintz did not take any action in response, did not inform Mr. Patton that he was unable to continue to represent him, and did not withdraw his appearance at any time.

In connection with the Bankruptcy Court's proceedings on the Omnibus Motion, Mr. Mintz was ordered to disgorge $3,525 in fees to Mr. Patton. Mr. Patton informed the

U.S. Trustee that he had not heard from Mr. Mintz since October 2021. Mr. Patton told the U.S. Trustee that he emailed Mr. Mintz in March 2022, asking him to contact one of his creditors, and that Mr. Mintz never replied. Mr. Patton repeatedly called Mr. Mintz's office and cell phone. After hearing no response, he went to Mr. Mintz's office in Columbia, Maryland, in July 2022 and was told that Mr. Mintz had moved out of the space "a couple months ago."

### 10. Elliott Bennett

Elliott Bennett paid Mr. Mintz $1,100 for his representation in a Chapter 13 matter and agreed to pay him an additional $2,500 over the course of the Chapter 13 process. Mr. Mintz filed a "bare bones" petition on Mr. Bennett's behalf in June 2019. In November 2021, BMW Bank of NA filed a motion for relief from the automatic stay as to Mr. Bennett's car. Because Mr. Mintz failed to respond, the motion was granted. In January 2022, another motion for relief from the stay was filed in connection with Mr. Bennett's personal residence. Mr. Mintz failed to file a response. The court granted the motion lifting the stay in March 2022. In October 2022, the U.S. Trustee filed a motion to dismiss the case for failure to make plan payments. Mr. Mintz failed to respond. The court granted the U.S. Trustee's motion in November 2022. At no time did Mr. Mintz inform Mr. Bennett that he was no longer able to represent him, nor did he withdraw his appearance.

Pursuant to the U.S. Trustee's Omnibus Motion, the court ordered Mr. Mintz to refund Mr. Bennett $2,500. Mr. Mintz never paid the fees as ordered.

### 11. Dolka Vazquez

Dolka Vazquez retained Mr. Mintz for $1,085 for representation in her Chapter 13 matter and agreed to pay the remainder for a total of $4,925 throughout the Chapter 13 plan. Mr. Mintz filed a Chapter 13 petition on her behalf in May 2019. In October 2021, Churchill East Village Community Center filed a motion for relief from the stay regarding Ms. Vazquez's home. Because Mr. Mintz failed to respond, the motion was granted. Like his other clients, Mr. Mintz never communicated to Ms. Vazquez that he was unable to continue to represent her, nor did he withdraw his appearance from her case. In October 2022, Ms. Vazquez filed a request to proceed pro se, which was ultimately granted. Pursuant to the U.S. Trustee's Omnibus Motion, the court ordered Mr. Mintz to disgorge $3,840 to Ms. Vazquez, which remains unpaid.

### 12. Sharonda A. Colbert

Sharonda A. Colbert paid Mr. Mintz $1,100 for his representation in her Chapter 13 matter. Mr. Mintz filed a Chapter 13 petition on her behalf in July 2018, charging Ms. Colbert a total of $4,625. Ms. Colbert paid Mr. Mintz through the plan payments after the plan was confirmed on February 13, 2019. Due to Ms. Colbert's inability to reach Mr. Mintz, she was forced to file her affidavit to request discharge pro se. Mr. Mintz never told Ms. Colbert that he was unable to continue to represent her, nor did he withdraw his appearance in her case.

### C.      Failure to File Tax Returns and Tax Liens

Since 2009, Mr. Mintz has not filed his tax returns and has failed to pay taxes owed to both the State of Maryland and the federal government.  Mr. Mintz has tax liens filed against him in the Circuit Court for Montgomery County, which total over $56,000.[4]

### D.      Mr. Mintz's Bankruptcy Cases

Mr. Mintz filed a personal bankruptcy case in September 2016, which was later dismissed for failure to file the supporting documentation.  Thereafter, Mr. Mintz filed successive bankruptcy petitions in February 2017, October 2021, and March 2022.  All of these cases were dismissed for failure to file the required documents.  The court issued a show cause order in April 2022 after Mr. Mintz failed to appear at a scheduled video conference, ordering Mr. Mintz to explain why his case should not be dismissed as a bad faith filing with a bar to refiling.  Mr. Mintz filed a response and requested a hearing, stating that he was dealing with "personal issues."  After Mr. Mintz failed to appear at the hearing he requested, the court dismissed the case and banned Mr. Mintz from filing any other bankruptcy matters for 180 days.  Fewer than 180 days later, Mr. Mintz filed a Chapter 13 bankruptcy case on behalf of his wife, Elyca S. Mintz.  After the case was dismissed for failure to file the required documents, the court imposed an additional 180-day bar against

---

[4] The state tax liens filed against Mr. Mintz are associated with judgments entered against him in the following cases in the Circuit Court for Montgomery County: (1) Case no. 479389-V, with a judgment in the amount of $4,008.68 entered on February 13, 2020; (2) Case no. 470786-V, with a judgment in the amount of $9,886.77 entered on August 12, 2019; (3) Case no. 487578-V, with a judgment entered against both Mr. Mintz and his wife, Elyca Mintz, on October 8, 2021, in the amount of $5,993; and (4) Case no. 487624-V, with a judgment against both Mr. Mintz and his wife in the amount of $36,430.57.

filing on behalf of Elyca Mintz. According to Mr. Mintz, he filed for bankruptcy to stop foreclosure on his home, with each filing intended to give him time to secure a loan modification or refinance.

### E. Bar Counsel's Investigation

#### 1. Pacantara Complaint

In May 2021, Ms. Pacantara filed a complaint with Bar Counsel. Between June and August, Bar Counsel sent three letters to Mr. Mintz that included a copy of Ms. Pacantara's complaint. On all three occasions, Mr. Mintz failed to respond. After this matter was docketed for investigation, Bar Counsel sent a fourth letter in October, requesting a response. After receiving no response, Bar Counsel sent an investigator to Mr. Mintz's residence and personally delivered the four letters. During this visit, Mr. Mintz agreed to speak with the investigator over the phone. When they spoke, Mr. Mintz confirmed that Ms. Pacantara paid him $1,000 to represent her and that she signed a retainer agreement. Mr. Mintz stated that he had not contacted Ms. Pacantara since November 2020 because he suffered from depression after he was involved in an accident. He told the investigator that he would pay Ms. Pacantara the $1,000 in fees she had paid him and contact the assigned Assistant Bar Counsel by November 15, 2021. After Mr. Mintz failed to pay or contact Assistant Bar Counsel as promised, Bar Counsel's Office sent a fifth letter in January requesting that Mr. Mintz produce Ms. Pacantara's client file and a copy of the refund check. Later that month, the investigator contacted Ms. Pacantara, who reported that Mr. Mintz had sent her a check for $1,000 and told her that he would represent her pro bono in her bankruptcy proceedings. Ms. Pacantara told creditors to contact Mr. Mintz,

but they reported that Mr. Mintz was not answering the phone and that his voicemail was full.

The investigator again traveled to Mr. Mintz's residence to hand deliver Bar Counsel's fifth letter. Mr. Mintz agreed to call the assigned Assistant Bar Counsel. On April 5, 2022, Mr. Mintz appeared for a statement under oath regarding Ms. Pacantara's complaint. Mr. Mintz testified that he had been in an accident in November 2020 that impacted his ability to practice law and that he suffered from depression. In May 2022, Bar Counsel sent a letter requesting documents. Mr. Mintz never responded.

### 2. Olugbala Complaint

After receiving Mr. Olugbala's complaint, Bar Counsel emailed Mr. Mintz a letter with a copy of the complaint and requested a response, but delivery to the email address failed. Bar Counsel subsequently mailed two letters to Mr. Mintz's residence with response deadlines, but Mr. Mintz failed to respond to both. In September 2023, the matter was docketed for investigation, and Bar Counsel renewed its request for a response to Mr. Olugbala's complaint and included a notice of intent to take a statement under oath. Mr. Mintz did not respond. When the investigator interviewed Mr. Olugbala, Mr. Olugbala stated that he had not heard from Mr. Mintz since 2020, and that Mr. Mintz failed to attend two hearings in 2023.

On March 21, 2024, Bar Counsel learned that Mr. Mintz had been administratively suspended for failure to comply with IOLTA reporting and for non-payment of his client protection fund assessment.

### 3. U.S. Trustee Complaint

After Bar Counsel received the complaint from the Chief Deputy Clerk and after its subsequent correspondence with the U.S. Trustee, Bar Counsel sent Mr. Mintz a notice of docketing and the complaint by mail and email on September 12, 2023. The email was returned as undeliverable. The Commission issued a subpoena for Mr. Mintz to appear for a statement under oath regarding the U.S. Trustee's and Mr. Olugbala's complaints. The subpoena also required a written response to letters from Bar Counsel. The subpoena was personally served on Mr. Mintz. He failed to respond to the letters and failed to appear for the statement.

In January 2024, Bar Counsel's investigator hand delivered to Mr. Mintz a letter from Bar Counsel that proposed that he consent to filing a Joint Petition for Disbarment; otherwise, Bar Counsel informed Mr. Mintz in this letter that it would file public charges pursuant to Maryland Rules 19-718 through 19-728. Mr. Mintz agreed to speak with the investigator later that month. During that conversation, Mr. Mintz agreed to provide Bar Counsel with a letter from his mental health provider describing his mental health disorder and treatment plan. He also agreed to sign a waiver of confidentiality so that Bar Counsel could discuss his condition with his provider. Mr. Mintz was asked to send Bar Counsel a letter from his mental health provider of his diagnosis within one week. Mr. Mintz later requested two separate extensions to obtain this letter. Despite Bar Counsel's extensions, he never furnished the document to Bar Counsel. He did not respond to several calls, text messages, and emails.

18

The Commission issued another subpoena, which was personally served on Mr. Mintz. Mr. Mintz appeared for a statement under oath, during which he admitted that he: (1) failed to notify his clients after he stopped using his office location in 2022; (2) failed to take any steps to terminate his representation of these clients, despite his realization that he was not adequately representing them; and (3) refunded fees only to Mr. Gruner despite his obligations to disgorge fees in 11 other matters. Although Mr. Mintz agreed to provide his client files for all of the clients discussed, he never did.

## III

## Conclusions of Law

The hearing judge concluded that there was clear and convincing evidence that Mr. Mintz had committed all but one of the violations charged by the Commission. Neither Mr. Mintz nor the Commission filed any exceptions. We review the hearing judge's conclusions of law de novo and independently determine whether Bar Counsel established by clear and convincing evidence the alleged rules violations. Maryland Rule 19-740(b)(1)–(2); *Attorney Grievance Comm'n v. Trezevant*, 484 Md. 34, 47 (2023). Based on our independent review of the record and the hearing judge's conclusions, we agree with the hearing judge and conclude that clear and convincing evidence demonstrates that Mr. Mintz violated Rules 1.1 (competence), 1.3 (diligence), 1.4 (a) and (b) (communication), 1.5(a) (fees), 1.16(a) (declining or terminating representation), 3.2 (expediting litigation), 3.4(c) (fairness to opposing party and attorney), 8.1(b) (bar admission and disciplinary matters), and 8.4(a), (c), and (d) (misconduct).

19

### A. Failure to Meet Basic Standards—Competence (Rule 1.1), Diligence (Rule 1.3), and Communication (Rule 1.4)

Starting with the basic standards of conduct governing the legal profession, an attorney is obligated to "provide competent representation to a client," which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rule 1.1. An attorney falls short where he or she: (1) fails to act or acts in an untimely manner, resulting in harm to his or her client, *see Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 694 (2019); (2) fails to appear on behalf of a client without explanation, *see Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 337 (2020); (3) fails to notify a client of court dates, *Attorney Grievance Comm'n v. Aita*, 458 Md. 101, 132 (2018); or (4) fails to adequately pursue appropriate relief, *see id*.

Second, "[a]n attorney shall act with reasonable diligence and promptness in representing a client." Rule 1.3. *See also Attorney Grievance Comm'n v. Smith*, 457 Md. 159, 216 (2018) (noting that a violation of Rule 1.3 may occur when an attorney does "nothing whatsoever to advance the client's cause or endeavor") (citation modified); *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 223 (2012) (noting that "an attorney's failure to take fundamental steps in furthering a client's matter qualifies as neglect and inattentiveness to a client's interest").

Third, it is essential that an attorney communicate with his or her client. Rule 1.4(a) states, in pertinent part, that an attorney shall "keep the client reasonably informed about the status of the matter" and shall "promptly comply with reasonable requests for information[.]" Rule 1.4(b) provides that "[a]n attorney shall explain a matter to the extent

reasonably necessary to permit the client to make informed decisions regarding the representation." "A violation of this Rule occurs when a client repeatedly attempts to contact the attorney, but the attorney fails to respond." *Smith-Scott*, 469 Md. at 341; *see also Attorney Grievance Comm'n v. Planta*, 467 Md. 319, 349 (2020) (noting that Rule 1.4 violations have occurred where the attorney "fails to comply promptly with a client's reasonable requests for information" and where an attorney does not communicate crucial case information).

Conduct that violates one of these three rules—1.1, 1.3, and 1.4—often violates all of them. *Smith-Scott*, 469 Md. at 340; *Attorney Grievance Comm'n v. King*, 491 Md. 485, 503 (2025) (finding a Rule 1.3 violation "for the same reasons as those supporting" the "violation of Rule 1.1"). In this case, the hearing judge determined that Mr. Mintz's misconduct that violated Rule 1.3 also violated Rules 1.1 and 1.4(a) and (b). Given the overlapping nature of the conduct that violates each of these rules in this case, we discuss them together.

As reflected in the findings of fact, Mr. Mintz failed to satisfy the basic standards of competence and diligence in so many instances that we shall not attempt to summarize each of them individually. The hearing judge determined that Mr. Mintz violated Rules 1.1 and 1.3 with respect to all 14 clients whom he represented before the Bankruptcy Court by, among other things, repeatedly failing to: (1) file pleadings or responses to pleadings; (2) attend hearings; (3) file required supplemental documents; and (4) comply with court orders. Mr. Mintz's abdication of responsibility for these clients had serious consequences—his lack of competence and diligence resulted in dismissals of many of his

client's cases, and many clients lost the protection of the automatic stay for assets such as their residences. We agree with the hearing judge that Mr. Mintz violated these basic standards of professional conduct through an abandonment of "numerous clients in a wholesale fashion."

The hearing judge concluded that Mr. Mintz violated Rule 1.4, as well as Rules 1.1 and 1.3, in connection with each of the 14 clients whom he represented in the Bankruptcy Court by failing to: (1) notify clients of scheduled hearings and motions that required responses; (2) respond to clients' phone calls and emails; (3) otherwise keep clients informed about important matters related to their cases, including dismissals and court-ordered relief from automatic stays. We could not agree more and find that Mr. Mintz's lack of communication with his clients violated Rule 1.4, as well as Rules 1.1 and 1.3.

### B.    Fees (Rule 1.5(a))

Rule 1.5(a) states, in relevant part, that "[a]n attorney shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." The hearing judge concluded that Mr. Mintz violated Rule 1.5(a) when he: (1) took payment from Ms. Pacantara in exchange for filing a bankruptcy petition on her behalf but then failed to file the petition as agreed; (2) received $4,325 from Mr. Olugbala and, thereafter, failed to appear for two hearings and failed to notify Mr. Olugbala of the hearings; (3) was ordered by the Bankruptcy Court to disgorge fees to Ms. Meriwether, Ms. Vazquez, Mr. Bennett, Mr. Patton, Mr. Gruner and Ms. Counts; (4) failed to refund fees to Ms. Emilien after failing to attend scheduled hearings; (5) failed to disgorge fees to Mr. Grant after failing to provide any services of value other than the initial Chapter 13 filing; (6) failed to

disgorge fees to Ms. Hall after failing to provide services of value; (7) failed to complete the representation of Mr. Anglin; and (8) failed to provide competent representation of Ms. Colbert, Ms. Counts, and Ms. De La Rosa after taking fees.

We agree with the hearing judge that Mr. Mintz violated Rule 1.5 when he "fail[ed] to provide the services he was hired to provide his clients." *See Attorney Grievance Comm'n v. Wescott*, 483 Md. 111, 124 (2023) (finding Rule 1.5 violation where attorney accepted fee but only performed "scant services" that rendered the original fee unreasonable). We further agree that any reasonable fee that Mr. Mintz may have charged at the outset became unreasonable when he failed to provide services of value. *Garrett*, 427 Md. at 224 (stating that "an otherwise-reasonable fee can become unreasonable if the lawyer fails to earn it").

### C.    *Declining or Terminating Representation (Rule 1.16)*

Rule 1.16(a)(2) provides, in part, that "an attorney shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client" if "the attorney's physical or mental condition materially impairs the attorney's ability to represent the client[.]" The hearing judge found that Mr. Mintz violated Rule 1.16(a) by not withdrawing from his representation of the 14 clients discussed previously "when it became clear to him that his physical or mental condition materially impaired his ability to represent these clients." Based upon Mr. Mintz's statement under oath, in which he testified that he was unable to represent his clients because of an accident in November 2020 that impacted his ability to practice law and that he suffered from depression, we agree with the hearing judge's conclusion that Mr. Mintz violated Rule 1.16(a)(2).

### D. Expediting Litigation (Rule 3.2)

Rule 3.2 states that "[a]n attorney shall make reasonable efforts to expedite litigation consistent with the interests of the client." This Court has found Rule 3.2 violations where an attorney delays in taking "fundamental litigation steps in pursuit of the client's interests" and where he or she fails to serve necessary documents or fails to appear at scheduled hearings. *Garrett*, 427 Md. at 226; *see also Planta*, 467 Md. at 354–55 (finding Rule 3.2 violations where attorney failed to respond to discovery requests, failed to communicate to client settlement offer, and failed to prepare client for trial).

The hearing judge found that Mr. Mintz violated Rule 3.2 when he failed to: (1) file Ms. Pacantara's bankruptcy petition; (2) contact Ms. Colbert after filing her initial petition; (3) file objections to motions for relief from the automatic stay in connection with several of his clients' residential properties; (4) respond to motions; (5) supplement the "bare bones" petitions that required further documentation; and (6) appear at hearings. We agree with all the hearing judge's conclusions. Mr. Mintz's failure to act in each of these instances unnecessarily prolonged his clients' cases, and in many instances, resulted in their dismissal. There is therefore clear and convincing evidence that Mr. Mintz violated Rule 3.2.

### E. Fairness to Opposing Party and Attorney (Rule 3.4)

An attorney shall not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]" Rule 3.4(c). Rule 3.4 violations occur where attorneys fail to comply with court orders. *Attorney Grievance Comm'n v. Conwell*, 462 Md. 437, 469–70 (2019); *see also Edwards*, 462 Md.

at 704–05 (finding Rule 3.4(c) violations where attorney failed to appear at hearings, failed to enter appearance, and failed to respond to discovery requests).

The hearing judge found that Mr. Mintz violated Rule 3.4 because of his numerous failures to: (1) appear in court; (2) file supplemental documents after court orders required supplementation; (3) respond to show cause orders; and (4) comply with court-issued disgorgement orders. The hearing judge also found a separate violation of Rule 3.4 when Mr. Mintz failed to appear at the Office of the U.S. Marshal and did not comply with the disgorgement order to purge his contempt. We agree. Mr. Mintz repeatedly failed to represent his clients in court for scheduled hearings and disregarded numerous orders from the Bankruptcy Court, including contempt orders. This conduct clearly constitutes violations of Rule 3.4.

### F.    Bar Admission and Disciplinary Matters (Rule 8.1)

Rule 8.1(b) states that an attorney, in connection with a disciplinary matter, shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]" The hearing judge found that Mr. Mintz violated Rule 8.1(b) when he did not respond to the Commission's request for information concerning the complaints filed by Mr. Olugbala, Ms. Pacantara, and the U.S. Trustee. We agree with the hearing judge's conclusions and conclude that there is clear and convincing evidence that Mr. Mintz violated Rule 8.1(b).

### G.    Misconduct (Rule 8.4)

Rule 8.4(a) provides that an attorney commits professional misconduct if the attorney "violate[s] or attempt[s] to violate the [MARPC], knowingly assist[s] or induce[s]

another to do so, or do[es] so through the acts of another[.]" Because of Mr. Mintz's violations of the aforementioned disciplinary rules, the hearing judge found, and we agree, that he violated Rule 8.4(a).

Under Rule 8.4(c), it is professional misconduct to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" The hearing judge found that Mr. Mintz violated Rule 8.4(c) by: (1) failing to return his clients' funds after he was ordered by the Bankruptcy Court to do so; (2) failing to file tax returns and pay taxes; and (3) filing serial bankruptcy filings on his own behalf, and later, on behalf of his wife, because the filings were "intended to circumvent the court's order in a deceitful manner." We agree with the hearing judge that all the above-described misconduct constituted dishonest behavior under Rule 8.4(c).

Under Rule 8.4(d), it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice[.]" The hearing judge found that Mr. Mintz violated Rule 8.4(d) when he failed to pay his taxes and because of his "contemptuous actions and inactions towards the U.S. Bankruptcy Court." We agree with the hearing judge's conclusion that Mr. Mintz's conduct was prejudicial to the administration of justice in violation of Rule 8.4(d). *See Attorney Grievance Comm'n v. Ibebuchi*, 471 Md. 286, 308 (2020) (finding Rule 8.4(d) violation when attorney "failed to provide the bare minimum of services required by our professional rules" and stating that it "cast[] a shadow on the profession as a whole").

26

# IV

## Imposition of Sanction

As this Court has frequently stated, the sanction in an attorney disciplinary proceeding is intended to protect the public and the judicial system from an attorney who fails to satisfy standards of professional conduct, to deter similar misconduct by other attorneys, and to maintain public confidence in the legal system. *See, e.g.*, *Attorney Grievance Comm'n v. Kane*, 465 Md. 667, 732–33 (2019); *Wescott*, 483 Md. at 127. In devising the appropriate sanction, we consider not only the facts of the particular case, but also the presence of any aggravating or mitigating factors. In so doing, we refer to a list of factors identified by the American Bar Association. *See Attorney Grievance Comm'n v. Blatt*, 463 Md. 679, 707 n.19 (2019) (listing aggravating and mitigating factors).

In accordance with Maryland Rule 19-727(e)(3), the hearing judge made findings as to aggravating and mitigating circumstances. The hearing judge found one mitigating factor present, which was that Mr. Mintz had no prior disciplinary history. We conclude that the record supports the hearing judge's finding of the single mitigating factor by a preponderance of the evidence. *See* Maryland Rule 19-727(c).

With respect to aggravating factors, the hearing judge found by clear and convincing evidence the following: a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; substantial experience in the practice of law; refusal to acknowledge the wrongful nature of the misconduct; victim's vulnerability; indifference to making

27

restitution or rectifying the misconduct's consequences; and likelihood of repetition. We agree with the hearing judge that these aggravating factors are present.

The Commission recommended disbarment as the appropriate sanction given Mr. Mintz's numerous violations of the MARPC, asserting that Mr. Mintz "completely and utterly abandoned fourteen separate clients, causing them considerable financial and emotional distress." The Commission pointed to Mr. Mintz's repeated failure to obey orders from the Bankruptcy Court, his failure to appear for hearings and complete required filings, and his litigation tactics, which the Commission described as "'gaming' the bankruptcy system for his personal gain."

"When selecting a sanction in an attorney discipline case, we do so keeping in mind that our goal is to protect the public and deter future misconduct rather than to punish the attorney." *Attorney Grievance Comm'n v. Davenport*, 472 Md. 20, 35 (2021). The Court's sanction should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Smith-Scott*, 469 Md. at 363 (quoting *Attorney Grievance Comm'n v. Pennington*, 387 Md. 565, 596 (2005)).

Without a doubt, Mr. Mintz's misconduct warrants disbarment. We agree with the Commission that the totality of Mr. Mintz's misconduct "demonstrates a complete indifference" to the duty owed to his clients, to the court, and to the legal profession. Mr. Mintz's neglect of clients' cases, and his failure to communicate with his clients—all of whom were in the vulnerable and stressful process of filing for bankruptcy—and his continued failure to fully respond and participate in Bar Counsel's investigation seriously undermine the integrity of the legal profession. *See Attorney Grievance Comm'n v.*

28

*Kremer*, 432 Md. 325, 337 (2013) (noting that sanctions are imposed "to insist upon the maintenance of the integrity of the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute") (citation modified). Mr. Mintz's wholesale abandonment of his clients and his flagrant disregard for court orders is troubling, to say the least. Mr. Mintz's misconduct not only harmed his clients, but also erodes basic public confidence in the legal system and the rule of law. For the above reasons, we disbarred Mr. Mintz and awarded costs against him by per curiam order dated September 4, 2025.